IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


------------------------------------------------------ :
VAUGHN MCCLINE,                                        : CASE NO.  1:07 CV 0545
                                                       :
                                    Plaintiff          :
                                                       : <u>MEMORANDUM OF OPINION AND</u>
                          -vs-                         : <u>ORDER DENYING DEFENDANT'S</u>
                                                       : <u>MOTION FOR SUMMARY JUDGMENT</u>
                                                       :
    DAVID ROOSE,                                       :
                                                       :
                                    Defendant.         :
------------------------------------------------------ :

UNITED STATES DISTRICT JUDGE LESLEY WELLS


        This excessive force case arose when various members of the Euclid City Police

Department arrested plaintiff Vaughn McCline ("Mr. McCline") for disorderly conduct and

transported him to the Euclid City jail.  As a result of a tasering incident at the jail, Mr.

McCline filed the instant action pursuant to 28 U.S.C. § 1983 and the Fourth

Amendment, and the Ohio laws of assault and battery.  (Doc. 1).  Initially brought

against three officers of the Euclid City Police Department, the Court granted Mr.

McCline's motion to dismiss with prejudice all claims against Officers Steven Shubert

and Officer Ronald Sebush.  (Doc. 13).  The instant matter involves the remaining

defendant Officer David Roose ("Officer Roose").

        On 20 March 2008, Officer Roose filed a motion for summary judgment,

contending his conduct did not amount to excessive force in violation of the Fourth and

Fourteenth Amendment, and further maintained his conduct should be subject to

qualified immunity as action which is not "clearly established" as excessive force.  (Doc. 15).  Mr. McCline opposes the motion maintaining that the force used by Officer Roose was gratuitous and, because clearly excessive, Officer Roose was not shielded by a grant of qualified immunity.  (Doc. 17).  Officer Roose replied to Mr. McCline's opposition brief.  (Doc. 19).   The matter is now ripe for review.

For the reasons discussed below, the Court will deny Officer Roose's motion for summary judgment.


I.      BACKGROUND

A. Officer Roose's Version of Events

On 15 September 2006, Euclid Police Officer David Roose was dispatched to 22230 Euclid Avenue, Euclid, Ohio, the residence of David Anderson ("Mr. Anderson"), the cousin of plaintiff Vaughn McCline.  Officer Roose was dispatched in response to a 911 call from Mr. Anderson advising the police that his cousin "ain't wrapped too tight," was "acting a fool" and "getting on my nerves."  (Doc. 15, Ex. A.).  According to Officer Roose's police report, when he approached the area he witnessed Mr. Anderson holding a baseball bat while backing away from Mr. McCline.   Mr. Anderson signaled to Officer Roose and engaged him in conversation while Mr. McCline walked away from the scene and toward a nearby bus stop.  Officer Roose secured the baseball bat from Mr. Anderson.  (Doc. 15, Ex. B)  Officer Roose's report indicates that he approached Mr. McCline at the bus stop who "continued to yell and cause a disturbance" and asked him to "calm down" so that he could hear his side of the story.  Id.  Officer Roose

2

maintains that when he asked the plaintiff to "display his hand" – he had his one hand in his pocket and the second clutching a bag – Mr. McCline threw the bag toward the officer and did not show both hands until he was given a second request.  Id.  Officer Roose reported that Mr. McCline continued to yell at his cousin and would not tell the officer his side of the story.  Id.  Officer Roose further maintained that the plaintiff had an "odor of alcoholic beverage, glossy eyes, poor balance and slurred speech."  Id.  According to Officer Roose's report, he then placed Mr. McCline under arrest for Disorderly Conduct, in violation of Euclid Codified Ordinance §545.04, and handcuffed the plaintiff.  Id.  Officer Roose noted that Mr. McCline was resistant and the plaintiff was assisted into the officer's police car with "minor force."  Id.  While in the police car, Officer Roose maintains the plaintiff "continued to act in a violent/turbulent manner," stating that he "was an American and was not going to jail."  Id.

Pursuant to Officer Roose's report, when he arrived with Mr. McCline at the Euclid jail sally port he attempted to assist the plaintiff from the car but the plaintiff pulled away and refused all orders to exit the vehicle.  Id.  Officer Roost reported that Mr. McCline instead slid from the back seat of the car to come to rest on the sally port floor with his back against the door opening, his feet out in front of him and the open back door to his right shoulder.  Id.  Officer Roose maintains the police tried to carry the plaintiff into the jail but due to his physical size and actions it was not possible.  Id.  After "numerous attempts/requests/warnings," Mr. McCline was drive stunned with a Taser in his upper right leg.  Id.  Thereafter, according to Officer Roose, two officers and three corrections officers assisted Mr. McCline into the jail.  Id.

3

Officer Roose maintains in his Resistance/Response Report that the amount of force used on Mr. McCline was "mild" with the Taser drive stun lasting 3-5 seconds. (Doc. 15, Ex. C).

Mr. McCline was charged with Disorderly Conduct, in violation of E.C.O. §545.04, for his actions at his cousin's apartment complex, and he was also charged with Resisting Arrest, in violation of E.C.O. §501.16, for refusing to comply with officers' orders. (Doc. 15, Ex. D). On 28 September 2007, Mr. McCline pled guilty to Resisting Arrest, and the Disorderly Conduct charge was nolled by the Euclid City Prosecutor. Id.

### B. Mr. McCline's Version of Events

Mr. McCline maintains he and his cousin Mr. Anderson are close and that on the day of 15 September 2006 he dropped by his cousin's apartment for an unannounced visit because he had been out shopping in the vicinity. (Doc. 17, McCline Aff. ¶2). Mr. McCline contends the visit went awry because Mr. Anderson was having his carpet cleaned, had all his furniture to one side of the apartment, and did not want Mr. McCline to stay. (McCline Aff. ¶3). Mr. McCline maintains that when he hesitated, his cousin warned that he was going to call the police if he did not leave immediately, and then his cousin picked up a baseball bat. Id. at ¶4. Mr. McCline indicates that he then left the apartment and his cousin followed him carrying the baseball bat. The plaintiff maintains that neither he nor his cousin engaged in any physical contact, but that Mr. McCline was angry at the way his cousin was treating him. Id. at ¶5. Mr. McCline contends that he then walked to the nearby bus stop, sat down and waited for the RTA bus to take him home. Id.

4

Mr. McCline contends that Officer Roose arrived shortly after he sat down at the bus stop, he watched the officer talk to his cousin and take the baseball bat, and observed the arrival of one or two other Euclid police officers.  (Id. at ¶6).  Mr. McCline maintains that Officer Roose then approached him at the bus stop, told him to drop whatever he had in his hands and proceeded to handcuff the plaintiff.  (Id. at ¶8; Doc. 15, Ex. E, McCline Dep. at 17, 20).

Mr. McCline admitted to having difficulty getting into Officer Roose's patrol car due to his size and the chronic arthritis in his knees and lower back.  (McCline Dep. at 36, 42, 43; Doc. 15, Ex. G, Inmate Classification/Med Screening).  According to Mr. McCline, he rode in the police car "half-sitting, half-lying" with his feet behind the driver's seat; Mr. McCline remained in this position until Officer Roose arrived at the Euclid jail sally port at 4:17 p.m and the officer opened the back, driver's side door for Mr. McCline to exit, feet first.  (McCline Aff. ¶9; Doc. 17, Ex. 7, Sally Port Traffic Log).

Mr. McCline maintains that to exit the patrol car he scooted across the seat but ended up with his feet underneath his thighs where he then slipped out of the back door landing knees first on the concrete  sally port floor.  (McCline Dep. at 20, 23; McCline Aff. ¶10, 11).  At no time, Mr. McCline contends, did the officers or the jail personnel touch him, attempt to touch him, or come to his assistance.  Id.  Mr. McCline maintains that he attempted to stand from that position but because of his arthritis, his weight, and his inability to use his hands and arms for leverage, he could not rise to his feet.  Id. at 24, 25.  At this point, Mr. McCline asserts, he moved his feet out in front of his torso and sat against the open patrol car door and tried to push back against the car to raise himself to his feet.  Id.  Mr. McCline submits that he asked for help from the four officers

5

witnessing his efforts, that no officer made an effort to help, and that one officer remarked that he would not help the plaintiff rise to his feet.  (McCline Aff. ¶13; McCline Dep. at 25, 26).

Mr. McCline testifies that at this moment, while seated on the sally port floor with his back against the open, rear patrol car door, Officer Roose came around the open car door and applied a Taser to his right thigh in stun-drive mode.  (McCline Aff. ¶14; McCline Dep. 26, 47).  According the Mr. McCline, Officer Roose kept the Taser on his thigh for several seconds, creating pain, causing the plaintiff to cry out, slump to his left side, and exclaim, "what did you do that for?"  Id.  Mr. McCline further attests that Officer Roose then told him shift his legs, whereupon the officer again drive-stunned the plaintiff's right thigh with the Taser.  (Id.; McCline Dep. 29).  The Taser Information or Taser Log record indicates Officer Roose pulled the trigger on the Taser gun four times for a total burst of 17 seconds.  (Doc. 17, Ex. 6, Taser Log).

After being tasered, Mr. McCline contends one of the officers said "come on, help him up," at which point one or two officers helped get the plaintiff on his feet.  (McCline Aff. ¶15; McCline Dep. 26, 27, 29, 30).  Mr. McCline maintains he was very disoriented from the Taser drive stuns and was escorted to the jail's booking window by four or five officers.  Id.  While Mr. McCline was not seriously physically injured, by his own admission, he contends that he has recurring nightmares about being electrocuted and continues to possess a great deal of anxiety over being harmed by electricity.  (McCline Aff. ¶16; McCline Dep. 30, 31).

6

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment must be entered "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett,

477 U.S. 317, 322 (1986).  The moving party:

> always bears the initial responsibility of informing the district court of the
> basis for its motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file, together
> with the affidavits, if any," which it believes demonstrate the absence of a
> genuine issue of material fact.

Id. at 323;  see also  Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir.1991) (moving

party has the "burden of showing that the pleadings, depositions, answers to

interrogatories, admissions and affidavits in the record, construed favorably to the

nonmoving party, do not raise a genuine issue of material fact for trial") (quoting

Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987)).  The burden then shifts to the

nonmoving party who "must set forth specific facts showing that there is a genuine issue

for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting

Fed.R.Civ.P. 56(e)).  Thus, "[o]nce the moving party has met its initial burden, the

nonmoving party must present evidence that creates a genuine issue of material fact

making it necessary to resolve the difference at trial."  Talley v. Bravo Pitino Restaurant,

Ltd., 61 F.3d 1241, 1245 (6th Cir.1995).  Read together, Liberty Lobby and Celotex

stand for the proposition that a party may move for summary judgment by

demonstrating that the opposing party will not be able to produce sufficient evidence at

trial to withstand a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50.

Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir.1989).

7

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Michigan Protection and Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir.1994) (marking as standard that the plaintiff must present "more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff").  Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position.  Celotex Corp., 477 U.S. at 324.  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'"  Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted).

### III.    LAW AND ANALYSIS

### A.  Excessive Force and Qualified Immunity

Mr. McCline maintains that Officer Roose used excessive force in violation of the Fourth and Fourteenth Amendments, and the Ohio law governing assault and battery,

8

when the officer tasered Mr. McCline while the plaintiff sat on the sally port floor of the Euclid City jail.  (Doc. 1; McCline Aff. ¶ 14, 26, 47).  The federal claims arise under 28 U.S.C. § 1983, which requires a plaintiff to "establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law."  Sigley v. City of Parma Heights, 437 F.3d 527, 533 (6th Cir. 2006).

Officer Roose contends that he did not use excessive force in tasering Mr. McCline and that, even if the force was considered excessive, the doctrine of qualified immunity shields his actions in this §1983 claim.  See Graham v. Conner, 490 U.S. 386, 396 (1989); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Pierson v. Ray, 386 U.S. 547 (1967) (establishing that police officers may claim qualified immunity from suits brought under § 1983).  Under the doctrine of qualified immunity, governmental officials performing discretionary functions generally are shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow, 457 U.S. at 818.

Courts have recognized the protections afforded by qualified immunity as a means to "avoid excessive disruption of government" by shielding public officials' ability to exercise their discretion without undue fear of civil liability.  Id.  In particular, "police officers are entitled to qualified immunity unless, 'on an objective basis, it is obvious that no reasonably competent officer would have concluded that [the conduct was lawful]....' " Russo v. City of Cincinnati, 953 F.2d 1036,1042 (6th Cir. 1992) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). When a police officer invokes qualified immunity, the burden is on the plaintiff to demonstrate that the officer is not immune.  See Silberstein

9

v. City of Dayton, 440 F.3d 306, 311 (6th Cir. 2006).

### B.  The Two Factors Considered in Saucier v. Katz

The United States Supreme Court has established a two-part test for qualified immunity in the context of an excessive force claim, such as this, arising under 28 U.S.C. § 1983.  Saucier v. Katz, 533 U.S. 194 (2001).  First, the Court considers whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Id. at 201.  Second, if a violation of a constitutional right is apparent from the party's' assertions the Court then considers "whether the right was clearly established."  Id.  A motion for summary judgment on qualified immunity grounds must be granted unless the plaintiff can satisfy both elements of the Saucier test.[1]

When considering the first Saucier factor – whether the Officer's conduct violated

---

[1]At times the Sixth Circuit has elaborated the two-part Saucier test for qualified immunity into a three part analysis:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

Feathers v. Aey, 319 F.3d 843, 848 (6th Cir. 2003) (quoting Williams v. Mehra, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).  In Sample v. Bailey, 409 F.3d 689, 696 n. 3 (6th Cir. 2005), the Sixth Circuit explained that the first two steps mirror the two elements of the Saucier test, while the third element explicitly acknowledges the reasonableness requirement implicit in the 'clearly established' element as explained in Saucier.  Some panels of the Sixth Circuit have held that the three-step test is correct, but unnecessary in most cases, because "[i]n many factual contexts ... the fact that a right is 'clearly established' sufficiently implies that its violation is objectively unreasonable." Causey v. City of Bay City, 442 F.3d 524, 528 n. 2 (6th Cir. 2006). Under the facts of this case, the Court considers the latter, two-step, approach sufficient. The reasonableness of Officer Roose's conduct is discussed below in connection with the second element of the Saucier test.

10

a constitutional right – the Court must construe the evidence of a constitutional violation in the light most favorable to the plaintiff.  Id.  Accordingly, even if the facts are disputed, if the plaintiff's version of the facts does not rise to the level of a constitutional violation, then the first Saucier factor has not been satisfied and qualified immunity applies.  See Turner v. Scott, 119 F.3d 425, 428 (6th Cir. 1997).  Of equal importance, pursuant to the decision in Turner, when the plaintiff's evidence, viewed in the most favorable light, amounts to a constitutional violation, the first Saucier factor is satisfied even if the facts pertinent to the alleged constitutional violation are disputed. See id.

Individuals have a constitutional right not to be subjected to excessive force during an arrest.  Graham v. Connor, 490 U.S. 386, 388 (1989).  Claims of excessive force in the context of an arrest are analyzed under the Fourth Amendment's "objective reasonableness standard."  Saucier, 533 U.S. at 204.  If the amount of force used to accomplish the arrest is objectively reasonable based on Fourth Amendment seizure principles, then no constitutional violation occurred, and the first Saucier factor is satisfied.  See Baker v. City of Hamilton, 471 F.3d 601, 606 (6th Cir. 2006).

Pursuant to the decision in Graham, determining objective unreasonableness "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  Graham, 490 U.S. at 396.  Graham recognized the "the right to use some degree of physical coercion or threat thereof to effect [the arrest]" of a suspect.  Id. Whether the arresting officer's use of force is reasonable should be evaluated on a case by case basis, from the perspective of an officer on the scene, and in light of the "difficulties of modern police work."  Baker, 471 F.3d at 606; see also Scott v. Harris,

11

550 U.S. 372 (2007).  Although the Court's final inquiry turns on whether the totality of the circumstances justifies the force used to accomplish the arrest, the Supreme Court has identified three factors central to the determination of reasonableness: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the police officers or others; and (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight.  Graham, 490 U.S. at 396.

Considering these factors in the totality of the circumstances test, if Officer Roose's use of force – the Taser – was unreasonable under the particular circumstances of this case, then a constitutional violation occurred.  Neither party disputes that Officer Roose handcuffed Mr. McCline and then tasered him in the process of trying to get him to obey his command to rise to his feet from the sally port floor of the Euclid City jail.  The following facts related to Officer Roose's use of the Taser, however, are disputed:

(1) The duration and number of times Officer Roose tasered Mr. McCline. Officer Roose submits that he tasered Mr. McCline twice for a total of 3-5 seconds.  Mr. McCline maintains he was tasered four times according to the Taser gun download, for a duration of 17 seconds.

(2) Whether Officer Roose tasered Mr. McCline gratuitously.  Officer Roose submits that he tasered Mr. McCline because the plaintiff was resisting being carried into the jail (Doc. 15; Ex. B. Roose Report).  Mr. McCline maintains he provided no resistance and that Officer Roose tasered him after he asked for help standing up from his seated position on the sally port floor.  (McCline Dep. 15-17, 25-27).

12

(3) The extent to which Mr. McCline was resisting exiting the police car while in the sally port.  Officer Roose maintains he attempted to assist the plaintiff out of the police car but that Mr. McCline pulled away from him and refused all orders to exit the vehicle. (Doc. 15, Ex. B).  Mr. McCline submits that Officer Roose neither touched him nor made any attempt to touch him and that the plaintiff complied with Officer Roose's order to exit the police car.  (McCline Dep. at 20, 23; McCline Aff. ¶ 10).

(4) Whether Officer Roose warned Mr. McCline prior to tasering the plaintiff.  Officers Roose and Shubert maintain that Mr. McCline received several warnings to stand up prior to Officer Roose administering the Taser.  (Doc. 15, Ex. B; Shubert Aff. ¶ 12, "more than ten to twelve requests or orders were given to Plaintiff for him to get up off the ground.").  Mr. McCline submits he heard no remarks but for one individual stating "I'm not going to help him up," and submits the Sally Port Traffic Log which suggests very little time passed between the arrival of Officer Roose's patrol car and Mr. McCline's booking into the jail.  (McCline Dep. at 26; Doc. 17, Ex. 7, Sally Port Traffic Log; Doc. 15, Ex. F, Booking Card).

Under the first Saucier factor, the Court must view the evidence in the light most favorable to Mr. McCline.  Saucier, 533 U.S. at 201.  Mr. McCline must, however, submit sufficient evidence to support his view of the facts.  See Carroll v. County of Trumbull, 2006 WL 1134206, * 13 (N.D. Ohio 25 April 2006) (finding vague and conclusory allegations of excessive force insufficient evidence to overcome summary

13

judgment);  Lee v. Ritter, 2005 WL 3369616 (E.D. Tenn. 12 December 2005) (same).

Mr. McCline supports his version of Officer Roose's conduct through his own affidavit and deposition, as well as sally port and Taser logs of the incident.  Further, Mr. McCline challenges inconsistencies in the police reports of Officers Roose and Shubert and the affidavits of both officers.  The evidence Mr. McCline has placed before the Court tells a coherent story, and issues of witness credibility must be resolved in favor of the plaintiff based on the summary judgment standard.  See Bass v. Robinson, 167 F.3d 1041, 1046 (6th Cir. 1999);  Adams v. Metiva, 31 F.3d 375, 382 (6th Cir 1994).

Neither party disputes that Mr. McCline was in handcuffs when Officer Roose tasered him on the sally port floor, and his assertion that he had difficulty rising to his feet while handcuffed, rather than deliberately resisting an officer's order, is plausible given his weight, his arthritic condition, and his inability to use his hands while handcuffed. (Doc. 17, McCline Aff. ¶ 9; McCline Dep. at 36, 43, 42; Doc. 15, Ex. G, Inmate Classification/Med Screening).  In addition, the Sally Port Traffic Log and the Taser Log, which depict the lapse of only minutes before the administration of four Taser bursts to Mr. McCline's leg, lend credibility to Mr. McCline's version of the story.


### C.  The Officer's Conduct was not Objectively Reasonable

Once the Court has determined, as it does here, that Mr. McCline has submitted evidence sufficient to support his version of the facts, the next question under the Saucier analysis is whether Mr. McCline's evidence indicates that Officer Roost used excessive force in violation of the Fourth Amendment.  A determination of excessive force turns on whether Officer Roose's use of the Taser was objectively reasonable

14

under the circumstances.  See Graham, 490 U.S. at 396.  Balancing Officer Roose's use of force as described by Mr. McCline against the plaintiff's right to be free from excessive force, and using the Graham factors for guidance, Mr. McCline's evidence establishes that a jury could find that Officer Roose's conduct rose to the level of a constitutional violation.

While the government may use reasonable force to accomplish an arrest, it is well-established that "the gratuitous use of force on a suspect who has already been subdued and placed in handcuffs is unconstitutional."  See Michaels v. City of Vermillion, 539 F.Supp 2d 975 (N.D. Ohio 2008) (quoting Bultema v. Benzie County, 146 Fed. Appx. 28, 35 (6th Cir. 2005));  Roberts v. Manigold, 240 Fed. Appx. 675, 677-78 (6th Cir. 2007) (noting that critical to the objective reasonableness inquiry is the excessiveness of the force used regardless of the weapon);  Griffith v. Coburn, 473 F.3d 650, 658 (6th Cir. 2007).  Further, the Sixth Circuit has repeatedly recognized that the use of non-lethal, temporarily disabling force on a handcuffed suspect who no longer poses a safety threat, flight risk, and/or is not resisting arrest constitutes excessive force.  See Bultema, 146 Fed. Appx. at 35 (citing Champion v. Outlook Nashville, Inc., 380 F.3d 893, 901 (6th Cir. 2004)), cert. denied, 544 U.S. 975 (2005); Greene v. Barber, 310 F.3d 889, 898 (6th Cir. 2002); Vaughn v. City of Lebanon, 18 Fed. Appx. 252, 265 (6th Cir. 2001); Adams v. Metiva, 31 F.3d at 386;  McDowell v. Rogers, 863 F.2d 1302, 1307 (6th Cir. 1988));  Landis v. Cardoza, 515 F.Supp.2d 809, 814-15 (E.D. Mich. 2007); Goebel v. Taser Int'l Inc., 2007 WL 2713053, at *6 (N.D. Ohio 14 September 2007).

To address the objective reasonableness of Officer Roose's actions, the Court turns to the Supreme Court's decision in Graham, inquiring into the severity of the crime

15

at issue, the safety threat presented, and the resistance raised by Mr. McCline.  First, the crimes for which Mr. McCline was arrested – resisting arrest and disorderly conduct – are not particularly severe.

Second, the evidence does not establish that, at the time of the tasering, Mr. McCline posed a significant threat to the officers, and there is no evidence that he posed a threat to anyone else.  Officer Roose testifies that while on the sally port floor Mr. McCline "simply was being noncompliant."  (Doc. 19, Roose Aff. ¶ 21). According to Mr. McCline's testimony, he asked for assistance in getting up prior to being tasered and was offered no warning that he would be tasered.  Both parties acknowledge that Officers Roose and Shubert were present in the sally port along with two jail personnel.  Taking the facts as alleged by Mr. McCline, a jury could find that a constitutional violation occurred when Mr. McCline was tasered and he did not present a threat to officer safety immediately prior to the tasering.  See Dickerson v. McClellan, 101 F.3d 1151, 1161 (6th Cir. 1996); see also, e.g., Russo v. City of Cincinnati, 953 F.2d 1036, 1044-45 (6th Cir. 1992).

Third, the evidence does not establish that, at the time of being tasered, Mr. McCline was resisting arrest or attempting to evade arrest.  While the evidence indicates a closer question regarding whether Mr. McCline resisted arrest when he first encountered Officer Roose on the street, that conduct does not establish that he was resisting arrest when he exited the patrol car by sliding, handcuffed, to the sally port

16

floor.[2]  According to the plaintiff, he asked for help, assistance was verbally refused by an officer in attendance and any 'resistance' was due to his weight, arthritic condition, and relative immobility as a result of being handcuffed.

The Graham factors favor finding that, taking the facts regarding the tasering as alleged by Mr. McCline, a jury could find that a constitutional violation occurred.  Put differently, the discrepancy between the parties' accounts of the tasering constitutes a material issue of fact and, under the first Saucier factor, Mr. McCline's version of the facts rises to the level of a constitutional violation.

Officer Roose maintains this matter is analogous to several other Taser use cases:   Ewolski v. City of Brunswick, 287 F.3d 492 (6th Cir. 2002);  Russo v. City of Cincinnati, 953 F.2d 1036 (6th Cir. 1992);  Goebel v. TASER International, 2007 WL 2713053 (N.D. Ohio 2007);  Biggers v. Lowe, 2007 WL 2071915 (S.D. Ohio 2007); Devoe v. Rebant, 2006 WL 334297 (E.D. Mich 2006);  Johnson v. City of Lincoln Park, 434 F.Supp.2d 467, 469 (E.D. Mich. 2006);  RT v. Cincinnati Public Schools, No. 1:05CV605, 2006 WL 3833519 (S.D. Ohio Dec. 29, 2006);  Draper v. Reynolds, 369 F.3d 1270 (11th Cir. 2004).  The Court has reviewed each of these cases in which the officers were granted qualified immunity, each court holding that the use of a Taser did not amount to excessive force under the circumstances.  Each of the cases relied upon by the defendant exhibits a material difference from the case at hand.  In Draper, Ewolski, Russo, Biggers and RT, the tasered plaintiff was not handcuffed.  This Circuit

---

[2]Mr. McCline pled guilty to resisting arrest on 28 September 2007 and the disorderly conduct charge was nolled by the Euclid City prosecutor.  Mr. McCline was sentenced to 30 days of jail confinement, given credit for 13 days served and the remaining 17 days were suspended.  (Doc. 15, Ex. D, Docket of Euclid Municipal Court, Case No. 06 CRB 1028)

has recognized that the "use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law."  Baker, 471 F.3d at 607.  The plaintiffs in Devoe, Johnson and Goebel, while handcuffed, nevertheless, continued to actively resist prior to the tasering, endangering the acting officer and others nearby.  In the instant case, while Mr. McCline was on the sally port floor, he was according to the defendant "simply [ ] noncompliant," and according to the plaintiff, unable to rise to his feet due to his weight, his arthritis and because he was handcuffed.

A recent, similar case helps to underscore the distinctions in the instant matter.  In Buckley v. Haddock,  the Eleventh Circuit found not unreasonable the officer's decision to twice taser a plaintiff who was placed under arrest for refusing to sign a traffic ticket.  While walking the handcuffed plaintiff to the police car to effect the arrest, the individual dropped to the road and refused to get up, sobbing that he was destitute and could not afford a traffic ticket.  The suspect was noncompliant.  The Court found the officer's use of force in this particular situation "not outside the range of reasonable conduct under the Fourth Amendment" by underscoring three facts: the incident occurred at night on the side of a highway with considerable passing traffic; the deputy could not complete the arrest because the plaintiff was resisting getting into the patrol car; and, the deputy resorted to using the Taser only after trying to persuade the plaintiff to cease resisting and, further, provided the plaintiff ample time to comply.  Id. at 794.  Viewing the evidence in the light most favorable to Mr. McCline, none of these three factors were at play in the instant matter.  Mr. McCline and Officer Roose were safely in the Euclid City jail sally port, Officer Roose and at least three other individuals were available to bring Mr. McCline to the booking desk, and Mr. McCline was not provided

18

an opportunity to comply.

Viewing the evidence in the light most favorable to Mr. McCline, under the first Saucier factor, a jury could find that Officer Roose's use of the Taser amounted to excessive force.  Accordingly, because a material issue of fact exists with respect to whether Officer Roose's conduct was objectively unreasonable under the Fourth Amendment totality of the circumstances test, the Court will deny the defendant's motion for summary judgment.  See Graham, 490 U.S. at 396.

### D.  The Constitutional Right is Clearly Established

The Court must next consider the second Saucier factor for qualified immunity, namely, whether the constitutional right at issue is clearly established.  Saucier, 533 U.S. at 201.  "[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established."  Wilson v. Layne, 526 U.S. 603, 615 (1999).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his [or her] conduct was unlawful in the situation he [or she] confronted."  Saucier, 533 U.S. at 202.

This Circuit has recognized that determining whether a constitutional right is clearly established requires the district court to look to the decisions of the Supreme Court, the Sixth Circuit, and to decisions in other circuits.  Champion v. Outlook Nashville, Inc., 380 F.3d 893, 902 (6th Cir. 2004) (determining that plaintiff must show

19

the prior articulation of a prohibition against the type of force exerted to demonstrate that the Officers unreasonably violated a clearly established right).  If it was not clearly established that a reasonable officer on the scene would have known that his conduct was unlawful under the circumstances, then Officer Roose is entitled to qualified immunity. Id.

Construed in the light most favorable to Mr. McCline, the evidence indicates that Officer Roose tasered the plaintiff after arresting and handcuffing him and while he was not resisting arrest.  In this instance, the specific right at issue is Mr. McCline's right to be free from the gratuitous use of force after he had been handcuffed, was not a flight or safety risk, and was not resisting arrest.  If this right is not clearly established then Officer Roose is entitled to qualified immunity.

The Sixth Circuit has repeatedly held that the use of force on a subject who is disabled or has been neutralized is excessive force as a matter of law.  See Baker, 471 F.3d at 607.  See also Shreve v. Jessamine Cty. Fiscal Court, 453 F.3d 681, 688 (6th Cir. 2006) (recognizing as established "the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest").  The Sixth Circuit has further applied this rule in several instances involving claims that a police officer used excessive force in tasering or deploying pepper spray against a suspect.  In Roberts v. Manigold, the Sixth Circuit denied qualified immunity, holding that a jury could find that the officer's use of a Taser violated the suspect's "clearly established Fourth Amendment right."  Roberts v. Manigold, 240 Fed. Appx. 675, 677-78 (6th Cir. 2007).  See also Baker, 471 F.3d at 607 (6th Cir. 2006) (suspect who first ran from the police but later surrendered with his hands held in the air had his Fourth Amendment right to be

20

free from excessive force violated when the defendant officer then struck him in the head with an asp upon apprehending him); Bultema v. Benzie County, 2005 WL 1993429 (6th Cir.  17 August 2005) (excessive force found where officer used pepper spray on handcuffed and subdued suspect);  McDowell v. Rogers, 863 F.2d 1302 (6th Cir. 1988) (finding excessive force where the subdued and handcuffed suspect was complying with the officers when he was hit in the head with a nightstick);  Michaels v. City of Vermillion, 539 F.Supp 2d 975 (N.D. Ohio 2008) (handcuffed suspect tasered several times after ceasing to resist arrest had his right to be free from excessive force violated).  Mr. McCline has shown a prior articulation of a prohibition against the type of excess force exerted in this instance.

In Hope v. Pelzer, 536 U.S. 730, 741 (2002), the Supreme Court explained that a case does not have to be "fundamentally similar" to the facts at bar to show that the right at issue is clearly established.  Prior cases are reliable if they provide "reasonable warning that the conduct at issue violated constitutional rights."  Id. at 740.  In Roberts, the Sixth Circuit noted that the excessiveness of the force and not the type of weapon proved the critical inquiry.  2007 WL 1732903 at *3.  Similarly, in Landis, the court analogized Tasers and pepper spray, explicitly noting "the Sixth Circuit's position on pepper spray also serves as sufficient notice that the unwarranted or improper use of a Taser by a government official can constitute excessive force in violation of a suspect's clearly established constitutional rights."  515 F.Supp.2d at 814-15.  See also Goebel, 2007 WL 2713053 at *6 (citing cases analyzing excessive force and the use of chemical sprays).

Construing the facts in the light most favorable to Mr. McCline, a reasonable jury

21

could conclude that Officer Roose tasered the plaintiff gratuitously and unreasonably. The clearly established line of authority prohibiting the gratuitous use of nonlethal, temporarily disabling force would be evident to a reasonable officer.  Equivalently, a reasonable officer would conclude that the manner in which Officer Roose allegedly used the Taser on Mr. McCline was unlawful under the circumstances as viewed in the light most favorable to the plaintiff.

As Mr. McCline has satisfied both factors of the <u>Saucier</u> test as to Officer Roose the Court determines the defendant exerted excessive force and is, further, not entitled to qualified immunity.  The motion for summary judgment will be denied.


**IV.    CONCLUSION**

For the reasons set forth above, this Court denies defendant Officer David Roose's motion for summary judgment and request for qualified immunity.




IT IS SO ORDERED.

　　　　　　　　　　　　　 　 /s/Lesley Wells　　　　　　　　　
　　　　　　　　　　　　　 UNITED STATES DISTRICT JUDGE